INTERCO INCORPORATED, a corporation, Plaintiff-Appellant,

v.

RANDUSTRIAL CORPORATION, a corporation, Defendant-Respondent.

No. 36784.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Feb. 3, 1976.

4. *U. S. v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).

James K. Pendleton and Robert E. McWilliams, Jr., St. Louis, for plaintiff-appellant.

Thomas E. Fitzgibbons, K. Steven Jones, St. Louis, for defendant-respondent.

GUNN, Judge.

Plaintiff-appellant Interco, Inc. (Interco) filed suit against defendant-respondent Randustrial Corporation (Randustrial) alleging breach of warranty on a product sold by Randustrial to Interco. Jury verdict was for defendant Randustrial, and Interco has appealed on the basis that the trial court erred in failing to find that Interco was entitled to judgment as a matter of law. The core issue is whether Interco established as a matter of law that Randustrial was guilty of a breach of an express warranty under § 400.2–313[1] of the Uniform Commercial Code and that Interco was thereby injured. We affirm the judgment.

Interco maintains facilities for its International Shoe Company division in St. Louis consisting of 21 buildings. In 1971, Building No. 3 required floor repairs on the first story. The floor was extremely rough, rendering it difficult to move merchandise between the storage area and loading dock. Interco's Manager of Facilities Engineering read Randustrial's building maintenance supply catalogue and from it ordered a product designated as Resilihard which was designed as a floor covering to smooth rough areas. However, after a discussion with Randustrial's sales representative and upon the latter's recommendation, another of Randustrial's products, called Sylox, was selected because of its flexibility. Sylox was applied to the first floor of Building No. 3, and its use was satisfactory for Interco's purposes.

The following year—1972—a floor problem similar to that in Building No. 3 developed in Building No. 1. The second floor of Building No. 1 became rough creating difficulty in the movement of hand-truck traffic. Because of the favorable experience with Sylox and also by reason of Randustrial's catalogue description for its use, Interco ordered and installed Sylox to the second floor of Building No. 1. The catalogue described the purpose of Sylox as "to patch or resurface old wood floors for hand-trucking or foot traffic." The order was placed and the Sylox applied without the advice of

---

1. Statutory references are to RSMo. 1969.

or consultation with Randustrial's representatives. The consequences were wholly undesirable, for shortly after its application, the Sylox began to deteriorate and became unserviceable; it was an impediment rather than an expedient in the movement of hand-trucking.

Randustrial's representative made an investigation and sought to alleviate the problem. The Sylox was tested and found not to be defective, but it was also determined that it had been properly applied by Interco. The fault lay, as asserted by Randustrial, in the movement of the second floor. It was noticed that there was simultaneous movement in the floor from both the top and the bottom, and according to Randustrial's representative, neither Sylox nor any other material was suitable for the floor as it had "too much give." A consulting engineer testified for Randustrial that he had examined and noted the movement in the floor of Building No. 1; that his professional opinion was that the probable cause of the Sylox failure was the floor movement. The difference between the success of Sylox in Building No. 3 and its failure in Building No. 1 was that there was a tighter bond between the surface and subsurface floors in Building No. 3 and, hence, less movement.

Interco maintains that it was entitled to judgment as a matter of law based on a breach of express warranty by Randustrial. Interco argues that the purchase of Sylox was based on the following Randustrial catalogue description of the material and asserts an express warranty thereby:

"Sylox is a hard yet malleable material which bonds firm to wood floors for smooth and easy hand-trucking. *Sylox will absorb considerable flex without cracking* and is not softened by spillage of oil, grease or solvents." (Emphasis added.)

In response to Interco's argument that there was a breach of express warranty as a

matter of law, Randustrial postulates that the following three fact questions were properly presented for jury determination, with the jury reasonably finding in favor of Randustrial on all three questions: 1) whether a warranty existed; 2) if a warranty did exist, whether Interco relied on such warranty; 3) if the warranty did exist and there was reliance thereon, whether the breakdown of Sylox was a direct result of a breach of warranty.

Both parties agree that § 400.2–313 of the Uniform Commercial Code is applicable to the facts of this case. Section 400.2–313, relating to express warranties provides:

"(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

■ There is a paucity of Missouri case law decided on the basis of § 400.2–313 which offers assistance for a denouement of the case under consideration.[2] Thus, we

---

**2.** Pre-U.C.C. Missouri law was similar in theory to § 400.2–313. A positive affirmation of fact by the seller made to induce a buyer to make a purchase constituted an

look for guidance to decisions of other jurisdictions made under the same provision of the U.C.C. *Komosa v. Monsanto Chemical Co.,* 317 S.W.2d 396 (Mo. banc 1958); *Eyerman v. Mercantile Trust Co., N. A.,* 524 S.W.2d 210 (Mo.App.1975).

■ We have noted that Interco claims the existence of a warranty as to Sylox, and Randustrial argues the absence of a warranty. We disagree with Randustrial's contentions in this regard. Although Randustrial contends its reference to Sylox in its sales catalogue did not constitute an express warranty, if the words used in the catalogue constitute a description or an affirmation of fact or promise about Sylox and became a part of the basis of the bargain, an express warranty was created. *Larutan Corp. v. Magnolia Homes Mfg. Co. of Neb.,* 190 Neb. 425, 209 N.W.2d 177 (1973). Randustrial also asserts that there could be no breach of warranty because Interco had failed to test the material before applying it to Building No. 1 and had failed to seek advice from Randustrial on its application. The uncontradicted evidence [3] was that the cause of the breakup of the Sylox was the movement in the floor. There was nothing vague in Interco's evidence as to the intended use of Sylox. The evidence was palpable that Interco wanted something to withstand flex without breaking. The catalogue stated that "Sylox will absorb considerable flex." Thus, there was a description or affirmation of fact or "warranty" regarding Sylox giving rise to the purpose for which it was purchased by Interco. This was not mere puffing of a product. Interco was entitled to take the catalogue description of Sylox at its face value and plain meaning. There was no need to consult Randustrial or seek its advice regarding the use of Sylox. Any suggestion that Interco was at fault for not

having tested the product or sought consultation is fatuous, for the catalogue description made no such requirement. "All the buyers are required to establish is that the express warranties were made and that they were false, thereby establishing a breach of the contract." *Young & Cooper, Inc. v. Vestring,* 214 Kan. 311, 521 P.2d 281, 293 (1974). Interco had no obligation to establish a defect in Sylox as Randustrial suggests. *Hawkins Construction Co. v. Matthews Co., Inc.,* 190 Neb. 546, 209 N.W.2d 643 (1973); *Huebert v. Federal Pacific Electric Co.,* 208 Kan. 720, 494 P.2d 1210 (1972). We have previously noted that there has been no contention that the Sylox was misapplied.

■ Randustrial's argument that Interco failed to prove reliance on any warranty is also not felicitous. There is no mention of reliance in § 400.2–313. And the comments to that section of the U.C.C. reveal that the concept of reliance as required in pre-U.C.C. warranty cases was purposefully abandoned:

> "In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence *no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof.* The issue normally is one of fact." Official Comment 3, § 400.2–313. [Emphasis added].

The unchallenged evidence was that Interco's Manager of Facilities Engineering read the catalogue description which stated that Sylox would "absorb considerable flex"; that his testimony was that "the literature says that it [Sylox] absorbs considerable flex. Based on that I was assuming that it

express warranty. *Charles F. Curry & Co. v. Hedrick,* 378 S.W.2d 522 (Mo.1964); *Turner v. Central Hardware Co.,* 353 Mo. 1182, 186 S.W.2d 603 (1945).

3. In its brief, Randustrial suggests that there was conflicting testimony as to the cause of

the failure of Sylox. There was no conflict of testimony. Indeed, it was Randustrial which presented the only evidence as to Sylox' failure—the floor movement.

would do the job." The U.C.C. requires no more than what took place here. The statement "absorbs considerable flex" became "part of the basis of the bargain." The fact that Interco relied to some extent on its past experience with Sylox in Building No. 3 is not determinative of any issue, as no particular reliance on an express warranty is necessary. *Young & Cooper, Inc. v. Vestring,* supra; *Hawkins Construction Co. v. Matthews Co.,* supra.

The fact that the language read by Interco was contained in a catalogue and was basically an advertisement does not preclude a finding that it is a warranty. A brochure, catalogue or advertisement may constitute an express warranty. See e. g. *Hawkins Construction Co. v. Matthews Co., Inc.,* supra; *Huebert v. Federal Pacific Electric Co.,* supra; *Anthony v. General Motors Corp.,* 33 Cal.App.3d 699, 109 Cal. Rptr. 254 (1973); *Rinkmasters v. Utica,* 75 Misc.2d 941, 348 N.Y.S.2d 940 (1973); *Ford Motor Co. v. Lemieux Lumber Co.,* 418 S.W.2d 909 (Tex.Civ.App.1967). However, the catalogue advertisement or brochure must have at least been read. *Pioneer Hi-Bred International, Inc. v. Talley,* 493 S.W.2d 602 (Tex.Civ.App.1973), as the U.C.C. requires the proposed express warranty be part of the basis of the bargain. See *Speed Fastners, Inc. v. Newsom,* 382 F.2d 395 (10th Cir. 1967). Randustrial does not dispute the fact that Interco had read the catalogue.

Randustrial relies on the pre-U.C.C. case of *Turner v. Central Hardware Co.,* 353 Mo. 1182, 186 S.W.2d 603 (1964), arguing that the statement that Sylox "will absorb considerable flex" merely reflects the seller's opinion of the goods and creates no warranty. In the *Central Hardware Co.* case, a ladder advertised as "mighty strong and durable" collapsed under use causing injury to the plaintiff. In discussing the use of factual information vis-à-vis mere "sales talk" in advertising, the court said at 186 S.W.2d 603, 606:

"The seller's privilege to puff his wares, enhance their quality and recommend their value, even to the point of exaggeration, is unquestionable, so long as his salesmanship remains in the field of 'dealer's talk,' commendation or mere expressions of opinion [cite omitted]. Particularly do the obligations of warranty not attach when the seller's talk is confined to expressions of opinion and not affirmations of fact. . . . Also, *depending on the circumstances,* assertions in handbills and advertisements as to the quality or condition of chattels may not, as a matter of law, be construed as warranties, and certainly not if they do not become a part of the contract of sale [cites omitted]. But the seller's protection lies in the fact that his is the choice of language and action. The tendency is to restrict the meaning and interpretation of the seller's language, especially as to the untruthful puffing of his wares, and, hold 'positive statements of quality affirmations of fact.' " [cites omitted; emphasis added].

We believe that the foregoing pre-U.C.C. law continues under § 400.2–313, which specifically excludes a seller's mere opinion or commendation from being interpreted as an express warranty. Section 400.2–313(2). The *Central Hardware Co.* case does make clear, though, that the language chosen by the seller in his advertising must be interpreted in favor of the buyer in order to restrict "untruthful puffing of wares." We believe that this is the same type of approach desired by the draftsmen of the U.C.C. In Official Comment 8, the draftsmen explain the difference between the "mere opinion" exclusion of § 400.2–313(2) and the requirement that the language be "part of the basis of the bargain":

"Concerning affirmations of value or a seller's opinion or commendation under subsection (2), the basic question remains the same: What statements of the seller have in the circumstances and in objective judgment become part of the basis of the bargain? As indicated above [i. e. in

previous Comments], *all of the statements of the seller do so unless good reason is shown to the contrary.* The provisions of subsection (2) are included, however, since common experience discloses that some statements or predictions cannot fairly be viewed as entering into the bargain." Official Comment 8, § 400.2–313. [emphasis added].

■ Recently, in *Young & Cooper, Inc. v. Vestring,* supra, the following distinction was made between statements of fact and statements of opinion:

"[R]epresentations of fact capable of determination are warranties, but mere expressions of opinion, belief, judgment or estimate by a dealer in sales talk are not. Where opinions are coupled with representations of fact which relate to such matters and are susceptible of exact knowledge, they constitute more than a mere opinion and are properly regarded as representations of fact, and, to the extent they are representations of fact, they constitute warranties." Op. cit. at 521 P.2d 281, 290.

An important factor is whether the seller assumes to assert a fact of which the buyer is ignorant or whether the seller merely expresses an opinion on which the buyer may be expected to have an opinion and be able to express his own judgment. *Weiss v. Rockwell Manufacturing Co.,* 9 Ill.App.3d 906, 293 N.E.2d 375 (1973); *General Supply and Equipment Co., Inc. v. Phillips,* 490 S.W.2d 913 (Tex.Civ.App.1972); *Carpenter v. Alberto Culver Co.,* 28 Mich.App. 399, 184 N.W.2d 547 (1970).

Although Randustrial is pertinacious in its contention that the catalogue content regarding absorbability of considerable flex is merely a reflection of opinion, we must disagree. It is manifest that the words so used were meant to induce purchases through the assurance that considerable flex would be absorbed and were not mere opinion.[4] The words were an affirmation of fact within the meaning of § 400.2–313.

■ But having determined that an express warranty as to Sylox did exist, we reach the crux of this case—whether there was a breach of that warranty by Randustrial as a matter of fact. Ordinarily—and this case is no exception—the question of whether there has been a breach of warranty is a factual matter to be determined by the trier of fact. *Ertl Co. v. Lange Plastics Co.,* 158 N.W.2d 93 (Ia.1968); *Judd Construction Co. v. Bob Post, Inc.,* 516 P.2d 449 (Colo.App.1973); *Jansson v. Hook,* 1 Ill. App.3d 318, 272 N.E.2d 385 (1971).

■ The keystone of this case and the basis for Randustrial's triumph before the jury and affirmation by this court continues to be the phrase "absorb considerable flex." That phrase is too imprecise to be defined as a matter of law.[5] It was for the jury to determine as a matter of fact whether Sylox conformed to the promise to absorb considerable flex. The jury could have reasonably found on the basis of the evidence presented to it that the flex or movement in the second floor of Building No. 1 was more than considerable and more than Sylox was designed to accommodate. The fact issue as to what amounted to

---

**4.** See *Acme Equipment Corp. v. Montgomery Cooperative Creamery Ass'n.,* 29 Wis.2d 355, 138 N.W.2d 729 (1966). There, the phrase "in good shape and good working order" was under the circumstances found to be an affirmation of fact as a matter of law and a sufficient standard for the trier of fact to determine whether a breach of warranty occurred; and see *McCormack v. Hankscraft Co.,* 278 Minn. 322, 154 N.W.2d 488 (1967), where a vaporizer was said to be "safe" and "practically foolproof." The

jury was allowed to find that these were factual statements and did not constitute mere puffing or sales talk.

**5.** Compare *Hawkins Construction Co. v. Matthews Co., Inc.,* supra, where it was advertised that a piece of equipment was "designed to safely carry working loads up to 20,000 pounds per panel." The court held that the statement was specific and constituted an express warranty as a matter of law.

considerable flex in this case was proper for the jury to determine. *Hawkeye-Security Ins. Co. v. Thomas Grain Fumigant Co.,* 407 S.W.2d 622 (Mo.App.1966).

The jury verdict for Randustrial is affirmed.

SIMEONE, P. J., and McMILLIAN, J., concur.