Donald L. SCHEIRMAN d/b/a Treasures Unlimited, Appellee,

v.

Paula Theobald COULTER, Appellant.

No. 53000.

Supreme Court of Oklahoma.

Oct. 21, 1980.

As Corrected Oct. 24, 1980.

Rehearing Denied Dec. 22, 1980.

Richard L. Blanchard, Tulsa, for appellee.

Seigel, Cassidy & Oakley by Sam H. Cassidy, III, Tulsa, for appellant.

HODGES, Justice.

This appeal involves a consumer credit sale of cookware in the amount of $457.15. The appellants seeks recovery on the basis of a purported violation of the Uniform Commercial Code [UCC], 12A O.S. 1971 § 2–313. It is also asserted by appellant that the Uniform Consumer Credit Code [UCCC], 14A O.S. 1971, § 2–413, precluded the awarding of attorney fees to appellee.

The buyer–appellant, Paula Theobold Coulter, contends that she should be permitted to recover on the contract because the appellee, Donald L. Scheirman, d/b/a Treasures Unlimited, breached an express warranty in concluding a retail installment contract for the sale of Aristo Craft Cookware. It is alleged that the seller–appellee told the buyer–appellant that the cookware could not be purchased in retail stores and could never be purchased at discount prices because it was only available from a distributor. The buyer, a marketing and economics major, had seen the cookware demonstrated while she was attending college. However, she could not afford to buy it at that time. After graduation, she contacted the seller for a further demonstration. The seller told her that: Aristo Craft and Royal Queen could only be sold through a distributor; Aristo Craft had been deactivated; it was no longer being manufactured; and West Bend made one line of cookware for sale by a distributor and another for retail sale. The seller recommended that she purchase the new line, Royal Queen, and she entered into a contract for its purchase. She was told she could change to Aristo Craft if she still liked it better after she "slept on it." The buyer called the seller the next day and substituted Aristo Craft for Royal Queen. Several weeks after the sale, the buyer noticed a newspaper advertisement offering the cookware on sale for $99.99. The buyer investigated the advertisement by going to Dillard's Department

Store to examine the pots and pans. The buyer concluded that the cookware was identical to that which she had purchased from the seller. After notifying the seller of her conclusion, she defaulted on the installment sale contract.

The seller sought to recover $384.57, the balance due on the contract, by filing an action in small claims court. The cause was transferred to the district court on the buyer's motion.[1] The litigants waived trial by jury. At the trial, the buyer testified she had investigated pots and pans for several years before she purchased the cookware. The buyer maintained that the quality or performance of the pans were excellent. Her disgruntlement was only with the marked variance in the price with she paid and the advertised retail price. The trial court entered judgment for the seller in the amount of the balance due on the contract and awarded attorney fees of $520.00. The trial court found there was no misrepresentation and the seller could not have known that the manufacturer was going to ship discontinued items into the local market area. The court also found that the representations of the seller were merely "puffing" and were not express warranties. The buyer asserts that the representations constituted express warranties which were either fraudulent or negligent or, in the alternative, the contract was unenforceable due to mutual mistake or unconscionability.

## I

The buyer contends that the statement the pots and pans were only available through distributors and would not be sold at a reduced price constituted express warranties. The question of whether an express warranty exists is for the trier of the facts.[2] The trial court determined that the seller did not make an express warranty. Express warranties relate to the conformity of goods and consider their quality, character or condition. An affirmation of the value of goods or a statement purporting to be merely the seller's opinion or commendation does not constitute a warranty,[3] nor does the mere expression of an opinion and representations which express the seller's opinion, belief, judgment or estimate. In order for an express warranty to exist, there must be an absolute assertion understood by the parties pertaining to the merchandise sold.

## II

The buyer insists that even if there was not an express warranty, the contract was unconscionable, unenforceable due to mutual mistake, and that the seller participated in fraud and negligent misrepresentation. These allegations were rejected by the trial court. It found that: the buyer only became dissatisfied after she discovered, six weeks later, the cookware was being closed out at a lower price; she entered the transaction with her "eyes open" and she was aware of the cost of the merchandise when she requested a demonstration by the seller. The buyer's testimony also reflected that she insisted on purchasing the discontinued line rather than the new one suggested by the seller. The evidence simply does not support her assertions of fraud, unconscionability, negligent misrepresentation or mistake.

## III

The appellant argues that the court was precluded by 14A O.S. 1971 § 2.413[4]

1. Actions may be transferred from the small claims court to district court pursuant to 12 O.S. Supp. 1978 § 1757. The statute in effect at the time required a court cost of $25.00.

2. *Eden v. Vloedman, 202 Okl. 462, 214 P.2d 930 (1950).*

3. It is provided by 12A O.S. 1971 § 2–313(2): "It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

4. The official comment to 7 Uniform Laws Annotated Consumer Credit Code, § 2–413, p. 377 (1978) states that this section reflects a policy decision to treat attorney fees not as a part of seller's general overhead to be indirectly im-

from awarding attorney fees to the seller. The buyer contends that the Legislature intended to limit additional costs in small credit sales transactions. We agree. There is an apparent conflict between 14A O.S. 1971 § 2–413,[5] which prohibits the recovery of an attorney fee in a consumer credit sale of less than $1,000.00 where the credit service charge exceeds ten percent; 12 O.S. 1971 § 936 which permits recovery of attorney fees to the prevailing party on a contract involving the sales of wares;[6] 12 O.S. 1971 § 939,[7] which provides for recovery of attorney fees to the prevailing party in an action for breach of warranty; and 12 O.S. Supp. 1978 § 1757,[8] which allows recovery of attorney fees by a prevailing plaintiff if the defendant removes the cause from small claims court to district court.

Involved in our case is a consumer credit sale. As such, we must apply the specific statute which prohibits allowance of attorney fees if the sale is less than one thousand dollars and the credit service charge exceeds ten percent.

In this case the consumer credit sale was for $457.15, with an annual interest rate of 18.75 percent; thus, the specific statute of 14A O.S. 1971 § 2–413 is applicable. We, therefore, find error in the award of an attorney fee.

AFFIRMED IN PART, REVERSED IN PART.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, BARNES, DOOLIN, HARGRAVE and OPALA, JJ., concur.

posed on all his customers. The charge initially is imposed at least in part to the defaulting buyer who gives rise to the expense. Apparently it was enacted to protect buyers from having to pay more than their contractual debt when defending against a collection action. The recovery for attorney fees is generally contemplated to be a part of the contract price.

5. The UCCC, 14A O.S. 1971 § 2–413, provides that no attorney fee may be assessed in transactions involving less than one thousand dollars if the credit charge exceeds ten percent:

"With respect to a consumer credit sale or with respect to a consumer lease the agreement may provide for the payment by the buyer or lessee of reasonable attorney's fees not in excess of fifteen percent (15%) of the unpaid debt after default and referral of an attorney not a salaried employee of the seller, or of the lessor or his assignee; provided, however, that no attorney's fee shall be allowed if the amount financed is One Thousand Dollars ($1,000.00) or less and the credit service charge exceeds ten percent (10%) per year calculated according to the actuarial method. A provision in violation of this section is unenforceable."

6. Attorney fees are awarded to the prevailing party on a contract involving the sale of merchandise under 12 O.S. 1971 § 936:

"In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs."

7. Attorney fees are taxed as costs and allowed to the prevailing party pursuant to 12 O.S. Supp. 1975 § 939:

"In any civil action brought to recover damages for breach of an express warranty or to enforce the terms of an express warranty made under Section 2–313 of Title 12A of the Oklahoma Statutes, against the seller, retailer, manufacturer, manufacturer's representative or distributor, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, which shall be taxed and collected as costs."

8. This statute, 12 O.S. Supp. 1978 § 1757, was found to be constitutional in *Thayer v. Phillips Petroleum Co., 613 P.2d 1041 (Okl.1980)*. It provides in pertinent part:

"On motion of the defendant the action shall be transferred from the small claims docket to another docket of the court, provided said motion is filed and notice given to opposing party at least forty–eight (48) hours prior to the time fixed in the order for defendant to appear or answer and, provided further, that the defendant deposit the sum of Thirty–five Dollars ($35.00) as the court costs, . . . If the plaintiff ultimately prevails in the action so transferred by the defendant, a reasonable attorney's fee shall be allowed to plaintiff's attorney to be taxed as costs in the case."