**ALLSTATE INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Alfred Lee BROWN; William Chase Brown; Kendall Brown; Edward Stonecipher; Mary Stonecipher; State of Oklahoma; Department of Human Services/Oklahoma Teaching Hospital, Defendants,**

**and**

**Hooshmand Niroumand, individually and as parent and next friend of David Niroumand, Nasim Niroumand and Nushin Niroumand, minors; Ehteran Radfar; Mahmoud Radfar; Khadijeh Samandizadeh, Defendants–Appellants.**

**ALLSTATE INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Alfred Lee BROWN; Kendall Brown, Defendants–Appellants,**

**and**

**William Chase Brown; Hooshmand Niroumand, individually and as parent and next friend of David Niroumand, Nasim Niroumand and Nushin Niroumand, minors; Ehteran Radfar; Mahmoud Radfar; Khadijeh Samandizadeh; Edward Stonecipher; Mary Stonecipher; State of Oklahoma; Department of Human Services, Defendants.**

Nos. 89–6312, 89–6326.

United States Court of Appeals, Tenth Circuit.

Nov. 29, 1990.

Redmond P. Kemether, Robert E. Walker, Inc., Oklahoma City, Okl., on the brief, for defendants-appellants Hooshmand, Nasim, and Nushin Niroumand, Ehteran and Mahmoud Radfar, and Khadijeh Samandizadeh.

Robert T. Keel, Keel and Kulmacz, Oklahoma City, Okl., for defendants-appellants Alfred Lee and Kendall Brown.

George D. Davis and Ronald L. Walker (Michael W. Brewer, on the brief), McKinney, Stringer & Webster, P.C., Oklahoma City, Okl., for plaintiff-appellee.

Before McKAY, LOGAN and ANDERSON, Circuit Judges.

PER CURIAM.

This declaratory judgment action was brought in the District Court for the Western District of Oklahoma by Allstate Insurance Company (Allstate) against its named insured, Alfred Lee Brown, and Alfred's two sons, William Chase Brown, and Kendall Brown (the Brown appellants), and against parties who were allegedly injured by a car driven by William Chase Brown (the Niroumand appellants). Allstate's complaint prayed for a declaration that it had no duty to defend, indemnify or pay the claims of any of the defendants. Vol. I, Doc. 1 at 3.

Alfred Lee Brown was the named insured under an automobile liability policy issued by Allstate. The Allstate policy specifically covered Alfred Brown's 1981 Ford Mustang and his 1975 Ford LTD. Alfred Brown's son, Kendall, who was stationed with the military in Korea, had left his 1974 Mercury Cougar with his father for storage. The Allstate policy did not specifically cover Kendall's car as a "described vehicle." Alfred's other son, William, a minor, used the Cougar belonging to his brother and was involved in an accident in which the Niroumand appellants were allegedly injured. The Niroumand appellants sued the Brown appellants in the District Court of Oklahoma County for person-

al injuries and property damage. The Brown appellants gave notice of a claim and requested that Allstate defend and indemnify them. After agreeing to defend the state court action, Allstate instituted this declaratory judgment action in federal court.

The federal district court granted Allstate's motion for summary judgment finding that "Allstate is not obligated to indemnify Alfred Brown for any claims resulting from William Brown's March 7, 1988, accident and is not obligated to pay the other defendants' claims against him arising from the accident."[1] Order of August 29, 1989 at 4. In an earlier order, the district court denied the Niroumand appellants' motion to certify questions of law to the Oklahoma Supreme Court. *Allstate Insurance Co. v. Brown*, No. CIV–88–1499–T, order at 5 (May 4, 1989).

On appeal, the Niroumand appellants argue (1) that the district court erred in refusing to certify certain questions as requested, (2) that it erred in deciding what they contend are questions of fact which were the subject matter of a pending Oklahoma state court action, and (3) that because a material question of fact exists as to whether William Brown had his brother's implied permission to use the car, summary judgment was inappropriate.

■ The Brown appellants argue in turn (1) that it was not necessary for Alfred Brown to be driving the vehicle in order to have coverage; (2) that Okla. Stat. tit. 23, § 10 (1981 & Supp.1986) imputes the negligence of William Brown to his father, thus requiring that Allstate defend and indemnify the father; (3) that the policy requires Allstate to defend its named insured if he is sued as a result of an auto accident, even if the suit is groundless and false and that it requires Allstate to pay all damages the insured is legally obligated to pay; (4) that Alfred Brown is entitled to attorney's fees for defense of the declaratory judgment action; (5) that a question of fact exists regarding negligent entrustment; (6) that

the district court erred in deciding questions of fact and in hearing a declaratory judgment action, given the pendency of the Oklahoma state court action; and (7) that a guardian ad litem should have been appointed for William Brown and that service of process on him was inadequate. We address these issues in order and apply a *de novo* standard of review. *See Ewing v. Amoco Oil Co.*, 823 F.2d 1432, 1437 (10th Cir.1987).

## THE NIROUMAND APPELLANTS

### Certification to Oklahoma Supreme Court

■ In denying the Niroumand appellants' request to certify, the district court stated that "certification is not appropriate on any of the questions presented by this case." Vol. I, Doc. 81 at 5. The decision to certify rests in the sound discretion of the federal district court. *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974). Certification is particularly appropriate where the legal question at issue is novel and the applicable state law is unsettled. *Id.* The appellants point to no issues raised in this case which implicate either unsettled or novel aspects of Oklahoma law. The district court, therefore, was well within its discretion to refuse defendants' request, and their motion to certify filed in this court is hereby denied.

### Need for Stay of Federal Action

■ The Niroumand appellants argue that the district court should have stayed the federal court action pending the outcome of the state court trial because the issue of permissive use of the automobile by William Brown was an issue in both courts. Niroumand Brief at 7. However, the appellants never filed a motion to stay the federal action with the district court. The closest appellants came to requesting this type of relief is in their brief objecting to Allstate's motion for summary judgment, where they argue that the permis-

---

**1.** As discussed below, Allstate eventually abandoned its claim that it had no duty to defend Alfred Brown. Vol. I, Doc. 46, at 9.

sion issue is a question of fact which should be decided in state court. Vol. I, Doc. 35 at 4. Even if the motion had been properly made, however, the district court would have been fully justified in rejecting it. The decision of whether to stay an action, like the decision regarding certification, rests in the sound discretion of the district court. *State Farm Mut. Auto. Ins. Co. v. Scholes*, 601 F.2d 1151, 1154 (10th Cir.1979) (quoting *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 662–63, 98 S.Ct. 2552, 2557–58, 57 L.Ed.2d 504 (1978)). One of the factors to be considered in exercising this discretion is "whether the claims of all parties in interest can satisfactorily be adjudicated in [the state court] proceeding." *Id.* at 1155 (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942). The federal action here seeks a declaratory judgment regarding rights and duties under a liability insurance policy. By statute, however, the Oklahoma courts are prevented from rendering a declaratory judgment "concerning obligations alleged to arise under policies of insurance covering liability or indemnity against liability for [tortious injuries to persons or to property]." Okla. Stat. tit. 12, § 1651 (1981 & Supp.1986). The claim of Allstate, therefore, regarding its obligations under its policy with Alfred Brown could not be satisfactorily adjudicated in the Oklahoma state court, thus making the relief requested by the Niroumand appellants inappropriate.

**Issue of Fact Regarding Implied Permission**

 Finally, the Niroumand appellants argue that because there is an issue of fact as to whether William Brown had implied permission to use his brother's automobile at the time of the collision, the district court erred in granting summary judgment. Summary judgment is appropriate only where no issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The relevant question for the trial judge is whether the evidence is so one-sided that a reasonable jury could only arrive at one conclusion. *See Anderson v. Liber-*

*ty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In this case, there are three people whose testimony regarding the issue of permission is relevant: Kendall Brown, the owner of the car, Alfred Brown, his father, and William Brown, the driver. All of these witnesses, including William Brown himself, deny that William had any sort of permission to use his brother's car. *See* Telephone Deposition of Kendall Brown, Vol. I, Doc. 26, Exhibit E at 14; Deposition of Alfred Brown, Vol. I, Doc. 26, Exhibit D at 20; Deposition of William Brown, Vol. I, Doc. 26, Exhibit F at 7–8. Given this deposition testimony, the trial court was correct in determining that there was no credible evidence from which a reasonable person could conclude that William Brown had any kind of permission, implied or otherwise, to drive his brother's car.

Appellants argue that implied permission is sufficient to provide coverage under Oklahoma's compulsory liability insurance statutes. As noted above, however, no fact issue exists even as to implied permission. Appellants cite *Young v. Mid–Continent Casualty Co.*, 743 P.2d 1084 (Okla.1987), which struck down an exclusionary clause limiting the liability of an insurer to an innocent victim of the negligent operation of an insured vehicle. *Id.* at 1088. In *Young*, however, the vehicle was clearly an insured auto maintained by the insured in compliance with the compulsory liability insurance requirements. *See id.* at 1085.

 Oklahoma's compulsory liability insurance statutes require that all vehicle owners maintain liability insurance or other authorized security at the minimum statutory amounts, unless the vehicle is exempt by statute. *Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery, Inc.*, 747 P.2d 947, 951 (Okla.1987). "In addition, all operators of motor vehicles are required to maintain liability coverage unless such coverage, which does not exclude the operator as an insured, is provided by the owner." *Id.* (footnote omitted). These statutes clearly place the obligation to insure on the owner, and in some cases on the operator, of a motor vehicle. They do

not operate to require an insurance company to provide coverage which is clearly outside the terms of its policy.

## THE BROWN APPELLANTS

We now turn to the arguments of the Brown appellants. Part I of the policy, dealing with bodily injury and property damage, provides in pertinent part:

**Allstate** will pay for all damages an insured person is legally obligated to pay—because of bodily injury or property damage meaning:

1. bodily injury, sickness, disease or death to any person, including loss of services; and

2. damage to or destruction of property, including loss of use.

Under these coverages, **your** policy protects an insured person from claims for accidents arising out of the ownership, maintenance or use, loading or unloading of an insured **auto**.

**We** will defend an insured person sued as the result of an **auto** accident, even if the suit is groundless or false.

The policy goes on to define insured persons:

1. While using **your** insured **auto**:

 a) **you,**

 b) any **resident,** and

 c) any other person using it with **your** permission.

2. While using a non-owned **auto**:

 a) **you,**

 b) any **resident** relative using a four wheel private passenger **auto** or **utility auto**.

Insured Autos are defined in pertinent part as:

A non-owned **auto** used by **you** or a **resident** relative with the owner's permission.

Vol. I, Doc. 26, Exhibit C at 5 (emphasis in original). As with all cases involving the construction of an insurance policy, it is critical to keep the policy language in mind as we examine the case law cited by the parties.

Need for Alfred Brown to be Driving

■ The Brown appellants first argue that it was not necessary for Alfred Brown to actually be driving the car for him to qualify as a user. They point to technical differences between the words "use" and "operate" and argue that only the word "operate" requires that a person actually be physically manipulating the car. While we agree that there are circumstances in which the terms may not be interchangeable, even were we to accept appellants' construction of the term "use" we would have to at least be able to find that William's actions with regard to the car served some purpose to benefit Alfred Brown or furthered some purpose of which he approved. *See Indemnity Ins. Co. v. Metropolitan Casualty Ins. Co.,* 33 N.J. 507, 166 A.2d 355, 358–59 (1960). Appellants have identified no evidence of any such purpose.

In support of their contention that Alfred Brown need not have actually been driving the car at the time of the accident to be covered, appellants cite *Government Employees Insurance Co. v. Kinyon,* 119 Cal. App.3d 213, 173 Cal.Rptr. 805, 812 (1981). In *Kinyon* the California Court of Appeals determined that a nonowned automobile clause did not require that the named insured have permission in order for coverage to exist for an accident in which the named insured's son was driving a non-owned auto. *Id.* The policy at issue in *Kinyon,* however, required the company to pay on behalf of the insured all damages arising out of the use of the owned automobile or any nonowned automobile. *Id.* No permissive use restriction as to the named insured was present. *Id.* That language is significantly broader than the policy language in this case. Here the policy protects an insured person from claims arising out of the use of an "insured auto." "Insured auto" is defined, *inter alia,* as "[a] non-owned auto used by you or a resident relative with the owner's permission." The difference in policy language in this case distinguishes it from *Kinyon.*

Statutory Imputation of Negligence

■ Closely tied to the Brown appellants' argument regarding the irrelevance

of physical use of the car by Alfred Brown is their argument that, by virtue of Oklahoma Stat. tit. 23, § 10, Alfred Brown is liable for the delinquent act of his son and therefore Allstate has a duty to indemnify. The statute provides:

The state or any county, city, town, municipal corporation or school district, or any person, corporation or organization, shall be entitled to recover damages in a court of competent jurisdiction from the parents of any minor under the age of eighteen (18) years, living with the parents at the time of the act, who shall commit any criminal or delinquent act resulting in bodily injury to any person or damage to or larceny of any property, real, personal or mixed, belonging to the state or a county, city, town, municipal corporation, school district, person, corporation or organization. The amount of damages awarded shall not exceed Two Thousand Five Hundred Dollars ($2,500.00).

*Id.*

Appellants argue that, for purposes of liability, this statute "vicariously makes Brown the driver/user of the non owned auto, the same as if Brown were physically driving." Reply Brief of Brown Appellants at 9. Thus, according to the Brown appellants, Alfred Brown's liability for his son's misdeeds somehow results in Alfred's becoming the user of the automobile.

We think this construction of the statute is too broad. While the statute does provide that an entity injured by the criminal or delinquent conduct of a minor can recover damages up to $2500 from the parents of the minor, the plain language of the statute is far from establishing that the parent is constructively deemed to have committed the same acts as his or her child. We also find no authority in Oklahoma stretching the effect of the statute to this degree. Our reasoning is supported by *Memorial Lawn Cemeteries Association, Inc. v. Carr*, 540 P.2d 1156, 1158 (Okla. 1975), in which the Oklahoma Supreme Court held that the vicarious liability imposed by Okla.Stat. tit. 23, § 10 did not constitute the constructive commission of a

tortious act within Kansas, thus permitting the Oklahoma resident parents of a minor who had caused property damage in Kansas to be served under the Kansas "long-arm" statute. Similarly, we do not believe that the vicarious liability created by the Oklahoma statute can serve to constitute constructive use for purposes of Alfred Brown's policy.

The appellants cite cases from other jurisdictions which involve different policy language and different statutes. In *United Services Automobile Association v. Crandall*, 95 Nev. 334, 594 P.2d 704 (1979), the policy promised to pay " 'all sums which the insured shall become legally obligated to pay as damages ... arising out of the ... use of ... any non-owned automobile.' " *Id.* at 705. A statute imputed any negligence or willful misconduct of a minor while driving a motor vehicle to the person who had signed the application of the minor for a driver's license. *Id.* at 705 n. 1. The Nevada Supreme Court held that the policy language, when combined with the operation of the statute, afforded coverage to the insured father for his daughter's negligent use of a nonowned automobile. *Id.* at 706. The policy at issue here, however, limits coverage to damages arising from the use of an insured auto, which is later defined to be a nonowned auto used by the insured or a resident relative with the owner's permission. There was no such limitation in the *Crandall* policy. *Id.* There coverage was provided for all non-owned autos, permission notwithstanding.

The case of *Wolford v. Wolford*, 662 S.W.2d 835 (Ky.1984), involved a statute similar to the Nevada statute that also imputed the negligence of the minor driver to the father who had signed the son's application for a driver's license. *Id.* at 837. The case is distinguishable from this one, however, because the car involved was the father's car and was therefore covered by the policy. *Id.* at 838. The car involved here was not owned by the named insured and was not specifically listed in the policy as an insured auto.

In *Rogers v. MFA Mutual Insurance Co.*, 262 Ark. 55, 554 S.W.2d 327 (1977) (en banc), the court held that the statute imput-

ing the negligence of a minor to the person who has signed the minor's driver's license application "places a parent in the position of an actual user of an automobile any time the parent *knowingly permits* a minor to drive an automobile upon a highway." *Id.* at 330 (emphasis added). Coverage for nonowned automobiles was contingent on permission, or a reasonable belief of permission, from the owner. *Id.* at 329. The driver had permission to drive her mother's car. The court held, under these facts and because of the operation of the statute, that the father's insurance provided coverage. The case is distinguishable because the parents' permission imputed statutory liability to them, and the use with permission brought the car under the definition of a covered nonowned auto.

Duty to Defend

Appellants' third contention is that Allstate has a duty to defend an insured person sued as a result of an auto accident, even if the suit is groundless and false, and that it also is obligated to pay all damages an insured is legally obligated to pay. Allstate's policy does provide that it will "defend an insured person sued as the result of an auto accident, even if the suit is groundless or false." We assume this is the reason Allstate maintained the defense for the Brown appellants in the state court action. Because that defense was made, appellants have no complaint against Allstate on that score.

■ Appellants attempt to argue that the terms of the policy also provide coverage for Alfred Brown. They do so by quoting selectively from the policy. At page 12 of appellants' opening brief, counsel quotes Part I, page 5 of the policy, to wit:

Allstate will pay for all damages an insured person is legally obligated to pay—because of bodily injury and property damage ... We will defend an insured person sued as the result of an auto accident, even if the suit is groundless or false ...

The paragraph counsel chose to omit is the following:

Under these coverages, your policy protects an insured person from claims for accidents arising out of the ownership, maintenance or use, loading or unloading of an insured auto.

The provisions of an insurance policy, like those of any other contract, must be read together. *Catts Co. v. Gulf Ins. Co.,* 723 F.2d 1494, 1501 (10th Cir.1983) (applying Oklahoma law). When read in its entirety, it is clear that protection runs only to an insured person and only for insured autos.

Allstate has fulfilled its obligation to defend appellants in the state court action. Whether it will have to provide coverage for any liability arising from that suit is the subject of the declaratory judgment action and this appeal. Appellants' argument here, therefore, merely restates prior coverage arguments and fails for the same reasons.

Costs and Fees for Declaratory Judgment Action

■ Appellant's demand for attorney's fees and costs incurred in defending this action is not well taken. While fees are available to the insured in a declaratory judgment action brought by the insurer, *see, e.g., Upland Mut. Ins., Inc. v. Noel,* 214 Kan. 145, 519 P.2d 737, 742 (1974); *Glens Falls Ins. Co. v. United States Fire Ins. Co.,* 41 A.D.2d 869, 342 N.Y.S.2d 624, 627 (N.Y.App.Div.1973); *cf. Montgomery Ward & Co. v. Pacific Indem. Co.,* 557 F.2d 51, 60 (3d Cir.1977) (fees to insured appropriate where insurance company would have been required to defend had the underlying action not settled), we have found no authority granting such fees to the losing party. *Mighty Midgets, Inc. v. Centennial Ins. Co.,* 47 N.Y.2d 12, 416 N.Y.S.2d 559, 564, 389 N.E.2d 1080, 1085 (1979), does not apply to the facts of this case. There the court denied attorney's fees to the insured because he had been the plaintiff in the declaratory judgment action. *Id.* The cases cited in *Mighty Midgets* to support dictum that an insured can recover fees are consistent with our holding that such an insured must be the prevailing party in the declaratory judgment action. *See id.*

■ Appellants suggest that the costs incurred in defending the declaratory judg-

ment action should be considered expenses incurred at the request of Allstate. At page 5, under Part I, Allstate promises:

When we defend an insured person under this part, we will pay:

1. ... other reasonable expenses incurred at our request.

Appellants cite *Upland*, 519 P.2d at 739, 743, arguing that the Kansas Supreme Court had awarded fees under a similar clause. The clause in *Upland*, however, was broader than the one here and could be read to apply to the fees and costs stemming from a declaratory judgment action. *See id.* at 739. Here, the reference to expenses incurred at Allstate's request is a subpart to a section describing what the company will pay when it defends an insured person under Part I. That defense refers to the defense of the underlying liability action. There is nothing in Part I that refers to or contemplates a declaratory action to determine coverage under the policy, and thus, the requested expenses portion of the policy cannot refer to those costs.

■ The only meritorious portion of appellants' argument regarding attorney's fees is the claim for fees resulting from Allstate's initial refusal in the declaratory judgment action to defend Brown in the state court action. Contrary to Allstate's assertions to this court, twice in its complaint it claimed to have no duty to defend. Vol. I, Doc. 1 at 3. Allstate did not relinquish this position until it responded to appellants' cross motion for summary judgment, where it argued that it was "maintaining" its position that it had not denied its obligation to defend Alfred Brown. Vol. I, Doc. 75, at 1–2.

When an insurer breaches its contract to defend, it is liable to its insured for damages caused by such breach. *State Farm Mut. Auto. Ins. Co. v. Skaggs*, 251 F.2d 356, 359 (10th Cir.1957) (applying Oklahoma law). Here, however, while Allstate's complaint and motion for summary judgment denied a duty to defend, Allstate, in fact, was providing a defense. The Niroumand appellants filed their action for damages in the state court on May 10, 1988. Vol. I, Doc. 39 at 2. On May 22, 1988, Alfred Brown received a letter from Allstate informing him that it would defend Brown in the state court action. *Id.* On June 23, 1988, the attorney retained by Allstate to defend Brown filed a general denial answer in state court. Allstate did not file this declaratory judgment action until August 29, 1988, well after it had begun its defense of Brown in the underlying liability action. Given this action by Allstate, the district court was within its discretion in denying attorney's fees to Brown.

Question of Fact Regarding Negligent Entrustment

■ Appellants argue that outstanding questions of fact regarding negligent entrustment exist precluding the grant of summary judgment. While negligent entrustment may be relevant in the underlying liability suit as a theory upon which the victims can recover, the facts supporting that theory are irrelevant to the question presented to the district court, namely, do the appellants have coverage under this policy. The theory upon which the injured parties may or may not prevail at trial in the state court was irrelevant to the district court's determination of whether Allstate was liable under its policy.

Procedure with Regard to William Brown

■ The Brown appellants argue that the trial court should have appointed a guardian ad litem for William Brown, a minor. Okla.Stat.Ann. tit. 12, § 2017(C) (West 1980 & Supp.1990), provides that "[t]he court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person." We read this language to commit the matter of the appointment of a guardian ad litem to the discretion of the district court. *See Westcott v. United States Fidelity & Guar. Co.*, 158 F.2d 20, 22 (4th Cir.1946) (construing identical language in Fed.R.Civ.P. 17: "[w]e cannot agree ... that the word 'or' in the last sentence really means 'and,' thus making the appointment of a guardian ad litem mandatory.") We have seen no evidence indicating any abuse of this discretion.

Finally appellants contend that William Brown was improperly served. This argument is without merit. Pursuant to Rule 4 of the Federal Rules of Civil Procedure and Okla.Stat.Ann. tit. 12, § 2004(C)(1) and (C)(2) (West 1980 & Supp. 1990), service by certified mail was proper.

Appellants' final argument regarding the need for the district court to stay its proceedings in favor of the parallel state action is rejected as discussed above.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.